IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
PINE BLUFF DIVISION

**BETTY JOHNSON**                                                                                    **PLAINTIFF**

**V.**                           **No. 5:08CV00194-BD**

**MICHAEL J. ASTRUE, Commissioner,**
**Social Security Administration**                                                           **DEFENDANT**

## MEMORANDUM OPINION AND ORDER

Plaintiff Betty Johnson brings this action under 42 U.S.C. § 405(g) for review of a final administrative decision denying her application for a period of disability and disability insurance benefits ("DIB") under Title II of the Social Security Act (the "Act"), 42 U.S.C. § 423, and for a claim for supplemental security income ("SSI") under Title XVI of the Act, 42 U.S.C. § 1382c. For reasons that follow, the decision of the Commissioner is affirmed.

**I.     Procedural History:**

Plaintiff filed applications for DIB and SSI on December 29, 2005, claiming a disability since December 1, 2005. Plaintiff claimed that she was disabled due to lupus. (Tr. 18, 66-68, 528-30) Her application was denied initially and upon reconsideration. (Tr. 18, 34-40, 48-55, 512-15, 518-27)

A hearing was held on August 29, 2007, before an administrative law judge ("ALJ").[1] On November 30, 2007, the ALJ issued his decision finding that the Plaintiff was not disabled under the Act. (Tr. 18-22, 531-54) Subsequently, the Plaintiff filed a complaint seeking judicial review. (docket entry #1) The parties have filed briefs, and the case is now ready for decision.

## II.     Background:

Betty Johnson was thirty-four years old at the time of the hearing before the ALJ. (Tr. 536) She had graduated from high school and had attended a community college for a short time. (Tr. 536-37) She had past relevant work experience as a cashier and packer. (Tr. 539, 551-52) Plaintiff last worked in 2004, as a convenience store clerk, but was fired for being absent to attend a trial related to her sister's earlier accidental death. (Tr. 539) At the hearing, Plaintiff claimed disability as a result of both lupus and high blood pressure.

According to Plaintiff's medical records, she was hospitalized in April of 2004, with a history of fever, chills, and night sweats, and was subsequently diagnosed with systemic lupus erythematosus ("lupus"). (Tr. 19, 161-64, 167-68, 429, 432)

In November of 2005, Plaintiff was hospitalized for pericarditis after reporting symptoms of cough, fever, and shortness of breath. (Tr. 19, 220-24) Randal Freeland Hundley, M.D., noted that Plaintiff's "probable pericarditis" was "possibly related to

---

[1] The Honorable David J. Manley.

lupus, although there was no clear evidence of lupus exacerbation." (Tr. 220) She was discharged in "markedly improved condition." (Tr. 220)

In August of 2005, James H. Abraham, III, M.D., examined Plaintiff in a follow-up visit related to Plaintiff's earlier lupus diagnosis. Dr. Abraham noted that Plaintiff's medical history indicated that she had done "really well" with her lupus since the 2004 diagnosis. At that appointment, Plaintiff told Dr. Abraham that she felt "okay." (Tr. 284) Dr. Abraham noted that Plaintiff reported a pain in her left leg when she stood and that the leg pain was, "[a]pparently [the] reason she is disabled." (Tr. 284) He noted also that Plaintiff, "has not been able to work since 2003." (Tr. 285) In fact, as noted, it is undisputed that Plaintiff worked until she was fired in 2004.

In December of 2005, Dr. Abraham again saw Plaintiff and opined that she did not have active lupus at that time. (Tr. 276-77) In May 2006, Dr. Hundley treated Plaintiff for pericarditis that caused Plaintiff to suffer chest pain. (Tr. 19, 211-17)

Plaintiff's medical records indicate that in November 2006, she saw Dr. Abraham for, "follow-up of her [lupus] with recurrent pericarditis." (Tr. 280) In evaluating Plaintiff's lupus and pericarditis, Dr. Abraham noted that Plaintiff, "did pretty well while she was on methotrexate [but] had a brief bout of pericarditis a couple of weeks ago after she had been off of methotrexate for a while." (Tr. 281)

In January 2007, Dr. Abraham noted that Plaintiff's lupus was "stable." He also noted that her blood pressure looked "very good." (Tr. 19, 273-74, 280-81) After January 2007, the medical records show no significant medical problems. (Tr. 289-91)

In a June 2007, Dennis Yelvington, M.D., completed a Medical Source Statement, opining that Plaintiff had the ability to lift and carry, at a maximum, less than 10 pounds, to stand and walk less than 2 hours in an 8-hour day, and to sit for less than 4 hours in an 8-hour day. (Tr. 510) Dr. Yelvington also opined that Plaintiff required frequent rest periods, longer than normal breaks, an opportunity to shift or change positions at will, an opportunity to elevate her feet, and limited fingering, handling, and reaching with no concentrated exposure to extreme cold and heat. (Tr. 510-11). His opinion was based on Plaintiff's "uncontrolled [hypertension]" and lupus. Dr. Yelvington noted that Plaintiff was taking "multiple medications" for her hypertension and had "numbness of hands occasionally." (Tr. 510) He also noted that Plaintiff was under the care of Dr. Abraham for her lupus.

### III.  Findings of the ALJ:

The ALJ followed the required five-step sequential analysis set out in 20 C.F.R. § 416.920(a)(4), finding: (1) that Plaintiff had not engaged in substantial gainful activity at any time, including since the onset of her alleged disability; (2) that she suffered from severe impairments, specifically lupus and hypertension; (3) that Plaintiff did not have an

impairment, or combination of impairments, that rose to the level of severity for any impairment listed in Appendix 1 to Subpart P of 20 C.F.R. § 404 ("Appendix 1"); and (4) that in spite of her impairments, Plaintiff retained the ability to perform her past relevant work.  Due to this finding, the ALJ did not proceed to step five in the analysis. (Tr. 18-19, 21-22)

The ALJ found that the Plaintiff retained the ability to perform light work, and that would include her past work.[2]  He acknowledged Plaintiff's allegations of severe disabling pain and considered those subjective complaints under the guidelines set out in *Polaski v. Heckler*, 751 F.2d 943 (8th Cir. 1984) and SSR 96-7p.  (Tr. 19)  He discounted Plaintiff's subjective complaints because the medical evidence was not consistent with the disabling level of pain asserted by the Plaintiff.  (Tr. 19)  He noted that there was nothing in the Plaintiff's medical records to show activity of Plaintiff's lupus since the original diagnosis in April of 2004.  (Tr. 19)

Plaintiff contends that the ALJ's findings are not supported by substantial evidence and contain errors of law because the ALJ: (1) improperly rejected Dr. Yelvington's opinions based on his status as Plaintiff's treating physician; (2) improperly found that Plaintiff had not been treated for lupus since April of 2004; (3) improperly discredited Plaintiff's subjective complaints of pain.

---

[2] "Light work" is defined as work involving "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. § 404.1567(b).

IV. <u>**Legal Analysis:**</u>

**A. Standard of Review:**

In reviewing the ALJ's decision, this Court must determine whether there is substantial evidence in the administrative record to support the decision. 42 U.S.C. § 405(g). This review function is limited, and the decision of the ALJ must be affirmed "if the record contains substantial evidence to support it." *Edwards v. Barnhart*, 314 F.3d 964, 966 (8th Cir. 2003).

"Substantial evidence is less than a preponderance but enough so that a reasonable mind could find it adequate to support the decision." *Id.* Evidence that both supports and detracts from the ALJ's decision must be considered, but the decision cannot be reversed "merely because there exists substantial evidence supporting a different outcome." *Id.* "Rather, if, after reviewing the record . . . it is possible to draw two inconsistent positions from the evidence and one of those positions represents the [ALJ's] findings, we must affirm the decision of the [ALJ]." *Young v. Apfel*, 221 F.3d 1065, 1068 (8th Cir. 2000) (citations and quotations omitted). Thus, the Court's function on review is to determine whether the Commissioner's decision is supported by substantial evidence on the record as a whole and whether it is based on legal error. *Long v. Chater*, 108 F.3d 185, 187 (8th Cir. 1997); 42 U.S.C. § 405(g).

The claimant bears the burden of proving her disability by establishing a physical or mental impairment that prevents him from engaging in substantial gainful activity.

*Ingram v. Chater*, 107 F.3d 598, 601 (8th Cir. 1997); 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. §§ 404. 1512(a), 416.912(a).

Plaintiff contends that Dr. Yelvington's finding recorded on a Medical Source Statement of Ability to do Work-Related Activities (Physical) completed on June 5, 2007, demonstrates that she cannot perform light work activity. (Plaintiff's Br., 17-20)

### B. Dr. Yelvington's Opinion

The Medical Source Statement completed by Dr. Yelvington indicates that the Plaintiff has physical restrictions that would prevent her from performing the requirements of light work. (Tr. 510-11) Plaintiff argues that the ALJ improperly discounted the opinion of Dr. Yelvington, her treating physician. (Plaintiff's Brief, p. 17)

There is some question as to whether Dr. Yelvington was Plaintiff's treating physician, as that term is used in the Social Security regulations. Dr. Chris Morgan is identified as Plaintiff's primary care physician on multiple entries in her medical records. (Tr. 111, 113, 131, 390, 391, 393, 397, 433, 442, 444, 448) Furthermore, Plaintiff never listed Dr. Yelvington as a "treating doctor." (Tr. 111, 113, 131-33) Dr. Yelvington did treat Plaintiff in December of 2005, for abdominal pain. (Tr. 297-98) On that occasion, however, Dr. Yelvington was identified as the "Admitting Physician," but Dr. Morgan was identified as Plaintiff's "Family Physician." (Tr. 297)

To be considered a "treating physician" under Social Security regulations, a physician must have a continuing treatment relationship with the patient. 20 C.F.R. §§ 404.1502, 416.902 (defining "treating source" as a physician who has provided medical treatment or evaluation and who has had an ongoing treatment relationship with the patient). There is nothing in the record to indicate that Dr. Yelvington was a treating physician for purposes of the Social Security regulations. He was not her treating physician for lupus. As Dr. Yelvington's Medical Source Statement indicates, Dr. Abraham was Plaintiff's treating physician for lupus.[3]  (Tr. 511)

Furthermore, the ALJ found that Dr. Yelvington's opinions as to Plaintiff's severe restrictions were not supported by the objective medical evidence. An ALJ may discount even a treating doctor's opinion if it is not supported by objective medical evidence. *Choate v. Barnhart*, 457 F.3d 865, 871 (8th Cir. 2006).

In this case, Ricardo Zuniga, M.D., one of Plaintiff's treating rheumatologists, found no evidence of active lupus in July and October of 2004, after his initial diagnosis of "early lupus" in April of 2004. (Tr. 152, 156, 161) Dr. Zuniga never assessed or imposed restrictions upon Plaintiff's activities. Dr. Zuniga observed that Plaintiff had a normal and independent gait, a normal cardiovascular examination, a normal musculoskeletal examination and a normal neurological examination (Tr. 152, 156, 163).

---

[3] Initially Plaintiff was treated for lupus by Ricardo Zuniga, M.D. (Tr. 152, 156, 161)

James H. Abraham, M.D., a later treating rheumatologist, examined and treated Plaintiff from August 2005 through January 2007. (Tr. 273-87) Dr. Abraham observed that Plaintiff was on prescription medication for lupus and "had no activity of her lupus in some time now." (Tr. 286) Dr. Abraham's examination revealed mostly normal findings (Tr. 274, 276, 280, 285-86). Dr. Abraham provided for no restrictions upon Plaintiff's activities. An ALJ may take into account the fact that a claimant's treating physician provides for few or no limitations. *Hensley v. Barnhart*, 352 F.3d 353, 356 (8th Cir. 2003). In addition, the ALJ should give more weight to treating specialists than to the opinions of a source, such as Dr. Yelvington, who is not a specialist. *Dixon v. Barnhart*, 353 F.3d 602, 606 (8th Cir. 2003).

Chris Morgan, M.D., treated Plaintiff when she had bronchitis and pneumonia from April through October 2005. (Tr. 319-21, 329, 341-43, 345-47) Dr. Morgan's examination results do not support Dr. Yelvington's opinion. (Tr. 319-32, 336-38, 341-43, 345-73, 381-82, 385, 387)

Since the medical records do not support Dr. Yelvington's opinion, the ALJ properly found it was not entitled to any weight. An ALJ may reject the opinion of any medical expert when it is inconsistent with the medical record as a whole. *Estes v. Barnhart*, 275 F.3d 722, 725 (8th Cir. 2003).

**C.   Lupus**

The Plaintiff argues that the ALJ incorrectly found that the Plaintiff had not been treated for lupus since her original diagnosis in 2004. The ALJ found that the Plaintiff had "no evidence of activity of her lupus since original diagnosis in April 2004." (Tr. 19) While this is correct, it is also true that Plaintiff has had several bouts of pericarditis since 2004. Her doctors have noted that the pericarditis is possibly a result of Plaintiff's lupus. However, Plaintiff's three episodes of pericarditis over the relevant time period, even if related to her lupus diagnosis, did not render her disabled under the Social Security Act.

Plaintiff took prescription medication for lupus. (Tr. 156, 164) The record indicates that her lupus was well controlled. (Tr. 152, 156, 161, 220, 273-74, 276-77, 280-81, 286) An impairment that can be controlled by treatment or medication is not considered disabling. *Estes*, 275 F.3d at 725.

**D.   Hypertension**

In October of 2005, Plaintiff contracted pneumonia. Dr. Morgan noted in Plaintiff's chart that she had a history of lupus and hypertension, but that the hypertension had been "fairly well controlled." (Tr. 320) Certainly, there is evidence in the record of hypertension, particularly early on. (Tr. 156, 165, 284) For example, Plaintiff experienced "hypertensive urgency in April of 2005, prior to her alleged disability onset date. (Tr. 342)

Plaintiff was hypertensive in May of 2006, while hospitalized for chest pain, but Dr. Hundley attributed this to her pericarditis and steroid therapy for the pericarditis. (Tr. 211) In November 2006 and January 2007, Plaintiff's hypertension was under control with medication. (Tr. 19, 211, 214, 235, 274, 277, 280, 389-90) At her January 16, 2007 doctor's visit, Plaintiff's blood pressure looked, "very good." (Tr. 274) An August 3, 2008 visit to a cardiologist revealed that Plaintiff's blood pressure was normal. (Tr. 235) Thus, there is substantial medical evidence to support the ALJ's finding that Plaintiff's hypertension was not disabling.

Plaintiff's blood pressure was well controlled eventually with medication. Because that impairment was controlled by medication, it was not error for the ALJ to conclude that Plaintiff's hypertension was not disabling, for purposes of the Social Security Act. *Estes*, 275 F.3d at 725.

### E.   Plaintiff's Subjective Complaints

The ALJ found that Plaintiff's allegations regarding her pain and limitations were not fully credible. (Tr. 21) Plaintiff alleges that this was error.

Credibility questions are for ALJ to determine in first instance. If an ALJ expressly discredits a claimant and gives good reasons for doing so, his judgment is normally entitled to deference. *Finch v. Astrue*, 547 F.3d 933, 935-36 (8th Cir. 2008) In this case, the ALJ expressly analyzed the Plaintiff's subjective complaints of pain using the factors set out in *Polaski*, *supra*. The ALJ was not required to discuss each *Polaski*

factor as long as he acknowledged and considered those factors before discounting the Plaintiff's subjective complaints. *Brown v. Chater*, 87 F.3d 963, 966 (8th Cir. 1996).

An ALJ may discount subjective complaints if they are inconsistent with the evidence as a whole. *Black v. Apfel*, 143 F.3d 383, 386 (8th Cir. 1998). In this case, the ALJ evaluated Plaintiff's credibility by considering her subjective complaints with the objective evidence, her daily activities, her medication and treatment, and her work history.

Plaintiff reported that her daily activities included cooking, doing laundry, washing dishes, and paying bills. (Tr. 19-20, 102-03, 121-22, 138-39, 540, 543). The ALJ noted that Plaintiff was a single mother, who cared for her children, ages 8 and 14. (Tr. 20, 101, 537, 543-44) Thus, contrary to Plaintiff's arguments, the ALJ properly considered Plaintiff's daily activities.

The ALJ also noted that Plaintiff was fired from her last job more than eighteen months before the alleged onset date of her disability. (Tr. 20, 539)

## V.     Conclusion

Plaintiff undoubtedly suffers from lupus and hypertension. The lupus causes her pain and occasional bouts of pericarditis. Both conditions appear to be controlled with medication, which the Plaintiff testified she has access to. Severe impairments, in and of themselves, do not constitute disabling conditions. Based on the record as a whole, the

ALJ's conclusion that Ms. Johnson retained the ability to perform light work is adequately supported.

Accordingly, judgment will be entered against Plaintiff and in favor of the Commissioner. The case is dismissed with prejudice, this 23rd day of September, 2009.

_____
UNITED STATES MAGISTRATE JUDGE